**FILED**

AUG 1 9 2010

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : CR. No. 10-076-ML |
| | : |
| | : |
| V. | : In violation of |
| | : 18 U.S.C. § 371 |
| | : 18 U.S.C. § 666(a)(1)(B) & (a)(2) |
| JOSEPH S. BURCHFIELD | : 18 U.S.C. § 1951 |
| RAYMOND L. DOUGLAS III | : 18 U.S.C. § 1001 |
| JOHN A. ZAMBARANO | : |
| ROBERT S. CIRESI | : |
| EDWARD IMONDI | : |

## FIRST SUPERSEDING INDICTMENT

The Grand Jury charges that:

### INTRODUCTION

At all times material to this Indictment:

1.    The Town of North Providence, Rhode Island (hereinafter "the Town") was a local government that received federal assistance in excess of $10,000 during the one-year periods beginning July 1, 2008 and ending June 30, 2009 and beginning July 1, 2009 and ending July 1, 2010.


2.    The Town Council ("the Council") for the Town of North Providence consists of seven Councilmen.  There are two Councilmen elected from each of the three districts in the

Town, and one Councilman-at-large.

## Parties, Persons and Entities

3.    Defendant JOSEPH S. BURCHFIELD ("BURCHFIELD") was the
President of the Town Council, and thus an agent of the Town
of North Providence, Rhode Island.  As such, BURCHFIELD's
duties included voting on, enacting, amending, repealing and
enforcing ordinances or resolutions necessary and proper for
the operation of the town government and for the
preservation of the public peace, health, safety and welfare
of the inhabitants of the town, and granting, revoking and
suspending licenses and permits.

4.    Defendant RAYMOND L. DOUGLAS III ("DOUGLAS") was a member of
the Town Council, and thus an agent of the Town of North
Providence, Rhode Island.  As such, DOUGLAS' duties included
voting on, enacting, amending, repealing and enforcing
ordinances or resolutions necessary and proper for the
operation of the town government and for the preservation of
the public peace, health, safety and welfare of the
inhabitants of the town, and granting, revoking and
suspending licenses and permits.

5.    Defendant JOHN A. ZAMBARANO ("ZAMBARANO") was a member of

2

the Town Council, and thus an agent of the Town of North Providence, Rhode Island.  As such, ZAMBARANO's duties included voting on, enacting, amending, repealing and enforcing ordinances or resolutions necessary and proper for the operation of the town government and for the preservation of the public peace, health, safety and welfare of the inhabitants of the town, and granting, revoking and suspending licenses and permits.

6. Defendant ROBERT S. CIRESI was an attorney with an office in North Providence, Rhode Island.

7. Defendant EDWARD IMONDI was a resident of North Providence, Rhode Island.

8. JOHN DOE #1, an unindicted co-conspirator whose true identity is known to the Grand jury, was the principal of a Rhode Island real estate development company, (hereinafter "JOHN DOE #1's COMPANY").

9. JOHN DOE #1's COMPANY operated in interstate commerce in the acquisition, development, construction and management of office, industrial, retail, and residential properties in Rhode Island and other states.

10. Beginning in approximately late summer 2008, JOHN DOE #1's COMPANY sought to develop a supermarket at a property located on Plympton Street in North Providence, Rhode Island (hereinafter after "the supermarket property"). The supermarket property is an approximately six (6) acre site located across from North Providence High School, on the site of a former junkyard. The property was zoned for Commercial Professional and Residential General use.

11. In order to develop the supermarket property as desired, JOHN DOE #1's COMPANY needed the Council to amend the Town's Comprehensive Plan and re-zone the property to Commercial General use. (Said action will be referred to hereinafter as "the supermarket property zoning change").

12. At all relevant times, CIRESI represented JOHN DOE #1's COMPANY before the Council.

13. JOHN DOE #2, an unindicted co-conspirator whose true identity is known to the grand jury, was the principal of a Rhode Island real estate development company, (hereinafter after "JOHN DOE #2's COMPANY").

4

14.   JOHN DOE #2's COMPANY operated in interstate commerce in the development and construction of real estate property.

15.   JOHN DOE #2 and IMONDI owned the supermarket property and entered into a purchase and sale agreement to sell the supermarket property to JOHN DOE #1's COMPANY.  The sale was never completed.

16.   Beginning in approximately February 2010, JOHN DOE #2's COMPANY sought to develop a property in the Lymansville section of North Providence, Rhode Island (hereinafter "the Lymansville property").  JOHN DOE #2's COMPANY sought to convert a building on the Lymansville property into residential use and erect additional structures.  The Lymansville property was zoned for Manufacturing General use.

17.   In order to develop the property into residential use, JOHN DOE #2's COMPANY needed the Council to amend the Town's Comprehensive Plan and re-zone the Lymansville property to Residential General use. (Said action will be referred to hereinafter as "the Lymansville property zoning change").

18.   At all relevant times, CIRESI represented JOHN DOE #2's

COMPANY before the Council.

19.   A business known to the grand jury but unnamed (hereinafter
      referred to as "Business A,") was a Rhode Island corporation
      operating in interstate commerce as a bar/lounge established
      for patrons to enjoy tobacco products and alcoholic
      beverages.

20.   When Business A opened in the fall of 2008, Business A had a
      license permitting the sale of beer and wine but did not
      have a "full" liquor license which would permit the sale of
      spirits or "hard" alcohol.

21.   Beginning on or about October 15, 2008, Business A applied
      to the Council for a "full" liquor license permitting the
      sale of spirits or "hard" alcohol.

22.   JOHN DOE #3, an unindicted co-conspirator whose true
      identity is known to the Grand jury, was a resident of North
      Providence, Rhode Island.   JOHN DOE #3 was an associate of
      BURCHFIELD and DOUGLAS and a relative of one of the
      principals of Business A.

23.   A business known to the grand jury but unnamed (hereinafter

6

referred to as "Business B,") was a Rhode Island corporation operating in interstate commerce as a hot dog restaurant.

24. Business B normally closed each night at 1:00 a.m. Beginning in or about March 16, 2009, Business B applied to the Council for permission to remain open for extended hours in its "drive-thru" lane to 4:00 a.m (such action will be referred to herein as "the extended hours request").

25. JOHN DOE #4, unnamed herein but whose identity is known to the grand jury, was an associate of BURCHFIELD, DOUGLAS and ZAMBARANO.

26. JOHN DOE #5, unnamed herein but whose identity is known to the grand jury, was an associate of BURCHFIELD and ZAMBARANO.

27. CS#1, unnamed herein but whose identity is known to the grand jury, was an elected member of the Town Council.

## COUNT ONE
## CONSPIRACY

28.   Paragraphs 1 through 27 are hereby realleged as if fully set
forth herein.

29.   From a date unknown but at least as early as the fall of
2008, through at least on or about May 6, 2010 in the
District of Rhode Island and elsewhere, the defendants

JOSEPH S. BURCHFIELD

RAYMOND L. DOUGLAS III

JOHN A. ZAMBARANO

ROBERT S. CIRESI and

EDWARD IMONDI

did knowingly and willfully conspire with each other and
with others known and unknown to the grand jury to commit
and attempt to commit offenses against the United States as
follows:

     a.   To corruptly accept and agree to accept,
anything of value from any person, intending
to be influenced or rewarded in connection
with any business, transaction, and series of
transactions of the government involving

8

anything of value of $5000 or more while being an agent of a State or local government and when such government or agency received, in any one year period, benefits in excess of $10,000 under a Federal program, in violation of Title 18, United States Code, Section 666(a)(1)(B) and Title 18, United States Code, Section 2.

b.   To corruptly give, offer, or agree to give anything of value to any person, with intent to influence or reward an agent of a State or local government, in connection with any business, transaction, or series of transactions of such government or agency involving anything of value of $5000 or more when such State or local government or agency received, in any one year period, benefits in excess of $10,000 under a Federal program, in violation of Title 18, United States Code, Section 666(a)(2) and Title 18, United States Code, Section 2.

c.   To knowingly obstruct, delay, and affect and

attempt to obstruct, delay, and affect in any way and degree commerce and the movement of articles and commodities in commerce by extortion, by obtaining property, that is, money, not due Defendants or their public offices, from another person or persons, with their consent, wrongfully induced by fear of economic harm, and under color of official right.

## The Objects of the Conspiracy

30.  It was an object of the conspiracy for BURCHFIELD, DOUGLAS and ZAMBARANO to unlawfully enrich themselves by obtaining money and other things of value from businesses and individuals who had an interest in official action pending before the North Providence Rhode Island Town Council.

31.  It was further an object of the conspiracy for BURCHFIELD, DOUGLAS and ZAMBARANO to receive and attempt to receive money in exchange for agreeing to perform and performing and attempting to perform official acts as members of the North Providence, Rhode Island Town Council.

32.  It was further an object of the conspiracy for CIRESI and

others known and unknown to the grand jury to cause
BURCHFIELD, DOUGLAS and ZAMBARANO to receive a cash bribe of
at least $25,000, so as to improperly influence and affect
the official actions of BURCHFIELD, DOUGLAS and ZAMBARANO,
specifically, to cause each of them to use his influence,
power, and authority as a Town Councilman to benefit the
business interests of JOHN DOE #1 and JOHN DOE #1's COMPANY.

33. It was further an object of the conspiracy to cause the Town
Council of the Town of North Providence, to take official
action for the benefit of JOHN DOE #1 and JOHN DOE #1's
COMPANY, to wit, to approve changes to the Town's
Comprehensive Plan and to re-zone the supermarket property
so that JOHN DOE #1 and JOHN DOE #1's COMPANY could develop
the supermarket property.

34. It was further an object of the conspiracy for CIRESI and
IMONDI and others known and unknown to the grand jury to
cause BURCHFIELD, DOUGLAS and ZAMBARANO to receive a cash
bribe in the amount of $75,000, so as to improperly
influence and affect the official actions of BURCHFIELD,
DOUGLAS and ZAMBARANO, specifically, to cause each of them
to use his influence, power, and authority as a Town
Councilman to benefit the business interests of JOHN DOE #2

11

and JOHN DOE #2's COMPANY.

35.  It was further an object of the conspiracy to cause the Town Council of the Town of North Providence, to take official action for the benefit of JOHN DOE #2 and JOHN DOE #2's COMPANY, to wit, to approve changes to the Town's Comprehensive Plan and to re-zone the Lymansville property so that JOHN DOE #2 and JOHN DOE #2's COMPANY could develop the Lymansville property.

36.  It was further an object of the conspiracy for CIRESI and IMONDI to unlawfully enrich themselves by obtaining money by acting as middlemen.

## Manner and Means of the Conspiracy

37.  The manner and means by which the conspirators accomplished, and attempted to accomplish, the goals and objectives of the conspiracy included, but were not limited to, the following:

38.  BURCHFIELD, DOUGLAS and ZAMBARANO solicited bribes from businesses having an interest in official action before the Council.

39.  BURCHFIELD, DOUGLAS and ZAMBARANO agreed to share the

12

proceeds of the bribes with each other and with CS#1.

40.   BURCHFIELD, DOUGLAS and ZAMBARANO used CIRESI, IMONDI, JOHN DOE #3, JOHN DOE #4 and JOHN DOE #5 as middlemen to communicate bribe solicitations to business owners and to facilitate the payment of bribes.

41.   BURCHFIELD, DOUGLAS and ZAMBARANO caused the Council to delay official action with respect to businesses who refused or were unable to pay bribes.

42.   ZAMBARANO took the lead role in seeking a bribe from JOHN DOE #1 and JOHN DOE #1's COMPANY.

43.   BURCHFIELD and DOUGLAS took the lead role in seeking a bribe from Business A.

44.   BURCHFIELD and ZAMBARANO took the lead role in seeking a bribe from Business B.

45.   DOUGLAS took the lead role in seeking a bribe from JOHN DOE #2 and JOHN DOE #2's COMPANY.

46.   BURCHFIELD, DOUGLAS and ZAMBARANO planned bribe

solicitations during telephone conversations and in-person meetings.

47.   BURCHFIELD, DOUGLAS and ZAMBARANO used veiled language when discussing bribes on the telephone in order to conceal the conspiracy and to effectuate its objects.

## Overt Acts

48.   In furtherance of the conspiracy, and to effect its objects, the co-conspirators committed the following overt acts among others, in the District of Rhode Island and elsewhere:

### The Supermarket Property Bribe

49.   In or about October 2008, ZAMBARANO, DOUGLAS and BURCHFIELD discussed the possibility of receiving a bribe in exchange for official action on the supermarket property zoning change.

50.   In or about October 2008, ZAMBARANO had a conversation with CIRESI in which ZAMBARANO and CIRESI discussed a bribe being paid by JOHN DOE #1 in exchange for favorable action by the Council on the supermarket property zoning change.

51.   On or about October 15, 2008, CIRESI accompanied ZAMBARANO

to JOHN DOE #1's COMPANY's office to meet with JOHN DOE #1
for the purpose of discussing a bribe in connection with the
supermarket property zoning change.

52.   On or about October 15, 2008, ZAMBARANO asked JOHN DOE #1
for at least a $25,000 bribe in exchange for the votes of
four Councilmen voting in favor of the supermarket property
zoning change.

53.   On or about October 15, 2008, JOHN DOE #1 agreed to pay
ZAMBARANO $25,000 after ZAMBARANO delivered four votes in
favor of the supermarket property zoning change.

54.   On or about November 12, 2008, at a bar called the Blue
Martini in Orlando, Florida, ZAMBARANO and DOUGLAS discussed
the supermarket property bribe.   ZAMBARANO expressed words
to the effect that he hoped the supermarket property bribe
would go through before Christmas because he needed the
money.

55.   On or about January 27, 2009, ZAMBARANO and CS#1 discussed
the supermarket zoning change bribe in a telephone
conversation. During the conversation, CS#1 mentioned
ZAMBARANO's comments in Florida regarding getting money from

the supermarket zoning change for Christmas.  CS#1 told
ZAMBARANO that CS#1 needed money and was willing to sell
CS#1's vote on the Council to be included in the scheme.
CS#1 asked ZAMBARANO "...Why can't you guys include me in
this stuff. You turn a blind eye here and there.  I'm
willing to do that..." CS#1 further stated "Just, do me a
favor.  When there's issues like this where you know we can,
we can take something - cut me in - consider me.  Instead of
leaving me out in the cold and, and then I'm always the guy
that has to make the noise. I'd rather be part of the group,
than against everybody all the time...." CS#1 further
stated "So, you know, if there's something there I'm willing
to look the other way, to bend, to shut up, to throw a vote
here and there." ZAMBARANO responded by informing CS#1 that
he would get back to CS#1.

56.   On or about January 27, 2009, immediately following the
conversation between Zambarano and CS#1, ZAMBARANO called
DOUGLAS to discuss involving CS#1 in the supermarket
property zone change bribe.

57.   On or about February 9, 2009, ZAMBARANO met with CS#1 to
discuss including CS#1 in the supermarket property zoning
change bribe.  ZAMBARANO stated "...I talked to these guys

after we had that conversation... only three of us involved in this... so it took me a little convincing."

58.   During the February 9, 2009 conversation ZAMBARANO told CS#1 that the others involved in the bribery scheme were BURCHFIELD and DOUGLAS.   ZAMBARANO stated "They don't even want to talk to you about it.   In other words, they agreed...."   ZAMBARANO continued "Now it's gonna be four of us.   So, you come tomorrow night.   If you go along with the show and go along with everything we'll give you four thousand dollars...."   ZAMBARANO stated "And I'm gonna tell you it was twenty five divided by three.   So we're not getting much more than you are...."   ZAMBARANO stated "But I mean I negotiated the deal. I mean... and they were in on it from the beginning...so I came up with that figure."   CS#1 asked "Twenty-five hundred?" to which ZAMBARANO replied "Twenty-five thousand."   ZAMBARANO stated to CS#1 that JOHN DOE #1 told ZAMBARANO "You deliver four votes and I'll give you twenty-five thousand dollars."

59.   During the February 9, 2009 conversation between ZAMBARANO and CS#1, ZAMBARANO indicated that ZAMBARANO, BURCHFIELD and DOUGLAS intended to solicit future bribes.   ZAMBARANO stated "...[A]nd there's something else coming down the road in the

future and we can all be part of this again... [JOHN DOE #1] told me he might want to put an Applebee's or Chili's in the parking lot... He said 'We're gonna need a liquor license.' He doesn't know they're a dime a dozen now and I'm not going to tell him, you know what I'm saying."

60. During the February 9, 2009 conversation between CS#1 and ZAMBARANO, ZAMBARANO explained how the supermarket property zoning change bribe would be executed, indicating that JOHN DOE #1 would only pay after the vote.   "He [JOHN DOE #1] said 'That's the way I do business.' He's not giving us nothing until after the meeting... I'm getting it tomorrow night.   I'm meeting him and Bobby CIRESI about an hour after the meeting.   ... I'll give everybody theirs too... and then Wednesday after work I'll give you the $4,000.   But Ray [DOUGLAS] says to me 'He's not gonna make this hard for us tomorrow night is he?'"   ZAMBARANO then asked CS#1 "You're going to vote for it right?" to which CS#1 replied "Yeah."

61. During the February 9, 2009 conversation, ZAMBARANO told CS#1 that he, ZAMBARANO, prevented another North Providence Town Councilman from pressuring JOHN DOE #1 to purchase a $20,000 digital billboard for North Providence High School, in order to protect JOHN DOE#1's business interests by

18

keeping the cost of the supermarket property project down.
ZAMBARANO stated "[The Councilman]'s not going to do that
because I made sure."

62.   In the February 9, 2009 conversation, CS#1 and ZAMBARANO
      discussed how to handle pressure from a business or
      individual who paid a bribe and later came before the
      council for official action on an unrelated matter.  CS#1
      asked "...if you... get paid for liquor licenses like that,
      what happens in a case like...(Unintelligible) when you have
      to discipline them?..."  CS#1 continued "...if you had
      charged them and then there's an issue later, how, like,
      doesn't he like own you at that point?"  ZAMBARANO replied
      "...See, they're breaking the law, just like we are."  CS#1
      then said "Yeah, but you think if, if he went and, and said
      something, who are they gonna grab?  The guy who took the
      money from him or the guy that was forced to pay?"
      ZAMBARANO replied "I don't know.  I don't know.  But are you
      happy with the four [thousand dollars]?"

63.   On Tuesday February 10, 2009, the Council held a vote on the
      zone change.  BURCHFIELD, ZAMBARANO, and DOUGLAS and CS#1
      all voted in favor of the supermarket property zone change,
      which passed.

64. After the February 10, 2009 Council Meeting, DOUGLAS
approached CS#1 as CS#1 sat in CS#1's vehicle preparing to
leave.   DOUGLAS knocked on CS#1's vehicle window and said
words to the effect of "It was nice not having to work
against you."

65. After the February 10, 2009 Council Meeting, ZAMBARANO
returned to his home, switched vehicles, and then drove to
the empty parking lot of Antonio's Restaurant, 1710 Cranston
Avenue, Cranston, Rhode Island and parked there at
approximately 10:29 p.m.

66. On or about February 10, 2009, at approximately 10:32 p.m.,
ZAMBARANO used his cellular telephone to call CIRESI's
cellular telephone.   The call lasted approximately 1 minute.

67. On or about February 10, 2009, at approximately 10:33 p.m.,
CIRESI pulled into the parking lot of Antonio's Restaurant
to deliver ZAMBARANO a cash bribe on behalf of JOHN DOE #1.
CIRESI pulled along side ZAMBARANO's vehicle and stopped for
approximately 3 minutes and delivered a cash bribe of at
least $25,000 to ZAMBARANO.

68. On or about February 10, 2009, CIRESI retained a portion of

the bribe paid by JOHN DOE #1 for himself.

69.   On or about February 10, 2009, after receiving the cash
      bribe, ZAMBARANO, BURCHFIELD and DOUGLAS met at DOUGLAS'
      residence to divide the bribe proceeds and discuss the
      bribe.  BURCHFIELD told ZAMBARANO words to the effect of
      "Hey Zam, you really orchestrated this great."

70.   On or about February 11, 2009, ZAMBARANO met with CS#1 in
      CS#1's vehicle and delivered a $4,000 cash bribe to CS#1.

71.   On or about February 11, 2009 while delivering a cash bribe
      to CS#1, ZAMBARANO discussed the supermarket property zoning
      change bribe with CS#1 and the conspirators intent to
      solicit future bribes.  ZAMBARANO said "I went down to [JOHN
      DOE #1's].  What happened was, I'm very close to Bobby
      CIRESI.  I'm very close to him and he said to me 'If youse
      want something, you're the guy that's gonna do the deal.  He
      [JOHN DOE #1] doesn't want to talk to anyone else about it.'
      So I went down there... so I said 'Alright. How does twenty-
      five sound?' He [JOHN DOE #1] said 'Fine.'" CS#1 replied
      "That easy?  You could have said forty."  ZAMBARANO then
      responded "I could have said fifty.  But next time, the
      Applebee's or the Chili's, I'm going to go for it."

## The Attempted Extortion of Business A

72. In or about late November 2008, BURCHFIELD and DOUGLAS met
    with JOHN DOE #3, and discussed the pending application for
    a full liquor license by Business A.

73. In or about late November 2008, BURCHFIELD and DOUGLAS
    caused JOHN DOE #3 to send a text message to one of the
    owners of Business A.  The text message solicited a $3,000
    bribe and stated words to the effect of "if you do the right
    thing, you will get a liquor license."  The owner of
    Business A refused to pay the bribe, sending a text which
    stated words to the effect of "Are you fucking nuts? Nobody
    is getting anything for that license...this is real life,
    this isn't a movie, like the Soprano's, where you have to
    pay to do things."  In response, JOHN DOE # 3 sent a text
    message stating words to the effect of "Just passing along a
    message."

74. On or about a date after December 2, 2008, the precise date
    being unknown to the grand jury, DOUGLAS attempted to
    conceal the bribe solicitation of Business A by falsely
    claiming to one of the owners of Business A that the text
    message sent by JOHN DOE #3 requested the owners of BUSINESS

A host or contribute to fundraisers for the Councilmen.

### The Attempted Extortion of Business B

75.   In or about March 2009, BURCHFIELD met with JOHN DOE #5 to discuss Business B's application for extended hours at its North Providence hot dog restaurant.

76.   In or about March 2009, BURCHFIELD communicated to JOHN DOE #5 that in exchange for favorable action on Business B's application for extended hours, BURCHFIELD and other members of the Council "wanted a ham sandwich," meaning that members of the Council wanted to be paid in exchange for approving Business B's request.

77.   In or about March 2009, ZAMBARANO discussed Business B's application for extended hours at its North Providence hot dog restaurant with JOHN DOE #5.

78.   In or about March 2009, ZAMBARANO discussed Business B's application for extended hours at its North Providence hot dog restaurant with JOHN DOE #5. ZAMBARANO asked JOHN DOE #5 if BURCHFIELD had spoken to JOHN DOE #5 about "getting a piece of a ham sandwich," from the owner of Business B, meaning the Councilmen's request to be paid in exchange for

approving Business B's application for extended hours.

79.   In or about March or early April, 2009, BURCHFIELD and
      ZAMBARANO caused JOHN DOE #4 to communicate to the owner of
      Business B that if Business B wanted its application for
      extended hours approved, Business B would need to pay $5,000
      to members of the Council.

80.   On or about April 7, 2009, after the owner of Business B
      refused to pay a bribe to BURCHFIELD, ZAMBARANO and DOUGLAS,
      DOUGLAS made a motion to defer action on Business B's
      application for extended hours.

81.   On or about April 7, 2009, after the owner of Business B
      refused to pay a bribe to BURCHFIELD, ZAMBARANO and DOUGLAS,
      ZAMBARANO seconded the motion by DOUGLAS to defer action on
      Business B's application for extended hours.

82.   On or about May 5, 2009, after the owner of Business B
      refused to pay a bribe, ZAMBARANO made a motion to deny
      Business B's application for extended hours.

83.   On or about May 5, 2009, after the owner of Business B
      refused to pay a bribe, DOUGLAS seconded the motion by

ZAMBARANO to deny Business B's application for extended hours.

84. On or about May 5, 2009, BURCHFIELD, DOUGLAS and ZAMBARANO caused the application for extended hours by Business B to fail because the owner of Business B refused to pay a $5,000 bribe.

85. On or about October 14, 2009, ZAMBARANO and BURCHFIELD met with CS#1 at an ice cream parlor owned by ZAMBARANO in North Providence, RI and discussed the conspiracy.

86. During the October 14, 2009 meeting, BURCHFIELD, ZAMBARANO and CS#1 discussed the attempted extortions of Business A and Business B. BURCHFIELD informed CS#1 that the attempts to extort Business A and Business B had failed.

87. During the October 14, 2009 meeting, BURCHFIELD sought to reassure CS#1 that BURCHFIELD, DOUGLAS and ZAMBARANO were not keeping any bribe payments related to other extortions from CS#1 and that CS#1 would be included if future bribes or extortions were successful. BURCHFIELD stated "I want to prove something to you. ...There was one thing that you know about and that's it. Christmas comes, you'll know it."

88.  During the October 14, 2009 meeting BURCHFIELD advised CS#1
     and ZAMBARANO to use caution in order to conceal the
     conspiracy.  BURCHFIELD stated "I just think it's a very
     dangerous thing to do right now and everybody's got to be
     careful....you know how it is out there. It's not like it
     used to be. ...Obviously it backfired a couple of times so I
     wouldn't recommend any of us getting involved in anything
     like that unless you know them like a brother..."

**The Lymansville Property Bribe**

89.  On or about March 8, 2010, ZAMBARANO engaged in a telephone
     conversation with CS#1 in which ZAMBARANO discussed the
     possibility of a bribe involving the Lymansville property.
     ZAMBARANO stated  "Another thing between me and you.  I
     might be working on something else too at the Lymansville
     Mill."

90.  In the March 8, 2010, telephone conversation ZAMBARANO went
     on to indicate to CS#1 that BURCHFIELD and DOUGLAS were also
     involved, as indicated by the following excerpt of
     conversation:

          CS#1:     OK.  What, is Joey [BURCHFIELD] not in on
                    that?

          JZ:       Yeah, Oh yeah, yeah.

                              26

CS#1:     And Ray [DOUGLAS] too?

JZ:       Aahh, yeah. The four of us.

91.   In the March 8, 2010 conversation ZAMBARANO compared the situation to the supermarket property bribe:

JZ:       And what resistance are we gonna get from neighbors over there?  There's nobody over there except for across the street. Half those people rent over there.  It's a great location.  In other words, like the [supermarket property] thing, that was a problem.  Because there was neighbors worried about traffic and everything. This is improving the neighborhood.

CS#1:     Right.

JZ:       I don't necessarily agree we were improving the neighborhood with the [supermarket property] but, you know, we did what we had to do.

CS#1:     Well, No, I think it's a great opportunity. I think its good all around too. It's a win-win. If we can grab something then that's all the better.

92.   In the March 8, 2010 conversation ZAMBARANO then indicated that he believed a bribe would be possible because CIRESI would be involved:

JZ:       But lo and behold, lo and behold, I said to [name omitted], "I need the information on that zone change, I said, because I need to know. It's in the middle of my district I need to know who's in charge of it." ... So I... I was gonna go see somebody I know see if they knew this lawyer, and see if they could work it out for us.  But then she called me back Thursday she said "That information I gave you on that zone change is

27

all changed now." She said "They called me they said they retained another attorney. They are not using the one they were using originally." Well then I find out Friday night, which I'm gonna call him today, guess who the attorney is?

CS#1:    Bobby CIRESI.

JZ:      Yup.

CS#1:    Boy that's nice.

JZ:      Yup.

93.  ZAMBARANO emphasized the value of having their co-conspirator CIRESI involved in any potential bribe:

JZ:      We'll see what happens then.  Because that's like the icing on the cake.  Bobby taking that over.

CS#1:    Cause now you know you got a friend you can approach.

94.  In the March 8, 2010 conversation ZAMBARANO stated "I don't care what [the three other Council members] feel about the zone change in Lymansville, as long as I can see if we can make it happen...."  ZAMBARANO further stated "The four votes will be there and let them do what they want to do."

95.  On or about March 15, 2010, ZAMBARANO had a telephone conversation with CS#1 in which they discussed extorting a bribe in connection with the Lymansville property:

CS#1:    Hey, did you ever get a chance to talk to Bob CIRESI?

28

```
JZ:        Yeah, that's another little thing. I don't
           want to talk about it on the phone, but yeah.

CS#1:      Okay.

JZ:        I got to talk to you a little bit.

CS#1:      Okay, is it thumbs up or thumbs down?

JZ:        It's an issue, it's an issue.

CS#1:      Is it?

JZ:        And....I ain't supporting it if it doesn't
           happen.
```

96.  In the March 15, 2010 telephone conversation, ZAMBARANO

asked CS#1 if CS#1 intended to support the Lymansville

property zoning change if they were unable to extort a

bribe:

```
JZ:        What I'm asking is if there is nothing that
           becomes of this....

CS#1:      Yeah.

JZ:        You know what I mean.

CS#1:      Yup.

JZ:        Are you going to still support it?

CS#1:      Oh, no... I'm going to follow your
           lead...no...if...

JZ:        No.

CS#1:      No... yeah... we'll just... uh
```

JZ:        The traffic or something is too bad or...

CS#1:      Yeah.

JZ:        (Unintelligible)...or something, whatever.

CS#1:      Yeah, there's a million reasons you can find.

JZ:        Yup...yup... but there is also a million
           reasons why we should but...

CS#1:      Yeah...well.

JZ:        We'll see what happens.

CS#1:      Hopefully they'll play ball.

JZ:        Yeah, I don't know. I hope.

CS#1:      Whose being the tough guy the seller or the
           buyer?

JZ:        He made it sound like it was the buyer, but
           (Unintelligible) has nothing to do with it.

CS#1:      Yeah...and I have no idea who the buyers are.

JZ:        He told me the name, but he don't even know
           'em. I know who the seller is uh, uh..

CS#1:      Yeah..[name omitted]

JZ:        [Name omitted] is one of them.

CS#1:      Yeah....yup, and he's got more money than
           God.

JZ:        Course they do.

97.  On March 16, 2010, at approximately 8:38 a.m., DOUGLAS

     called ZAMBARANO.

98.  On March 16, 2010, at approximately 2:20 p.m.,   ZAMBARANO

called CIRESI.

99. On March 16, 2010 at approximately 2:22 p.m., ZAMBARANO called BURCHFIELD.

100. On March 16, 2010, at approximately 2:30 p.m., ZAMBARANO called CIRESI.

101. On March 16, 2010, at approximately 2:33 p.m., CIRESI called IMONDI.

102. On or about March 16, 2010, CIRESI referred BURCHFIELD, DOUGLAS and ZAMBARANO to IMONDI to use as a middleman in the extortion of JOHN DOE #2 and JOHN DOES #2's COMPANY because IMONDI had a closer relationship with JOHN DOE #2 than CIRESI did.

103. On March 16, 2010, at approximately 2:49 p.m., ZAMBARANO called DOUGLAS.

104. On March 16, 2010, at approximately 4:17 p.m., ZAMBARANO called DOUGLAS.

105. On March 16, 2010, at approximately 4:30 p.m., ZAMBARANO

called DOUGLAS.

106. On March 16, 2010, at approximately 4:42 p.m., DOUGLAS
     called ZAMBARANO.

107. On March 19, 2010, at approximately 10:30 a.m., ZAMBARANO
     called CIRESI.

108. On March 26, 2010, at approximately 11:39 a.m., ZAMBARANO
     called CIRESI.

109. On or about March 26, 2010, BURCHFIELD, DOUGLAS and
     ZAMBARANO visited the site of the Lymansville property and
     met with JOHN DOE #2's business partner.

110. On or about March 28, 2010, ZAMBARANO met with CS#1 to
     discuss the progress of the Lymansville property bribe
     negotiations.  ZAMBARANO explained that the Councilmen were
     creating a ruse of false opposition to the Lymansville
     property zone change in order to pressure JOHN DOE #2's
     COMPANY into paying a bribe.

     JZ:   I talked to uh, Bobby CIRESI and I said, before he was
           hired to do this, and I said "You gotta find out who's
           involved in this here." I says, "and if you know the
           attorney." He said "Well, I'll see." Then low and
           behold, these people called Bobby out of the blue to
           represent them, this guy. ... So he says "yeah, I'm

meeting him tomorrow." He said "I don't even know him, John, so let me feel him out." So, ah, I said "all right." I said "Here's what I want you to do." I said "Set up a meeting with him, tell him that the councilmen in the area are concerned about some issues that the neighbors are calling up, several calls." I want him to think that the guy has got bigger problems.

CS#1: Did you really get calls?

JZ: No.

111. During the conversation between ZAMBARANO and CS#1 on or about March 28, 2010, ZAMBARANO stated that if JOHN DOE #2 refused to pay a bribe or was unable to do so, BURCHFIELD, DOUGLAS and ZAMBARANO would defer action on the Lymansville property zoning change:

JZ: Why the fuck should we give them that for nothing like that? They make, they're gonna make millions over there. Why should we? So we got four votes, me, you, Joey [BURCHFIELD], and, and, Ray [DOUGLAS] defer action. And if they ask why you defer action, at the time I'm gonna say because I, we got some, ah, ah, some concerns. This is, we gotta digest all this information.

112. On or about March 30, 2010, BURCHFIELD and DOUGLAS met IMONDI at the Cadillac Lounge in Providence, Rhode Island. IMONDI telephoned JOHN DOE #2 and told JOHN DOE #2 that JOHN DOE #2 "had a problem" and needed to speak to DOUGLAS. DOUGLAS told JOHN DOE #2 they needed to meet to discuss some issues.

113. On March 31, 2010 at approximately 8:38 a.m., IMONDI called BURCHFIELD.

114. On March 31, 2010 at approximately 9:35 a.m., BURCHFIELD called IMONDI.

115. On March 31, 2010 at approximately 9:48 a.m., IMONDI called BURCHFIELD.

116. On or about March 31, 2010, BURCHFIELD, DOUGLAS and IMONDI met with JOHN DOE #2 at a North Providence restaurant in North Providence.

117. At the meeting at the North Providence restaurant, DOUGLAS and BURCHFIELD falsely told JOHN DOE #2 that there was significant neighborhood opposition to the Lymansville property zoning change, that two to three hundred citizens were opposed, and that there was a petition against it.

118. At the meeting at the North Providence restaurant, DOUGLAS told JOHN DOE #2 in order to get a favorable vote on the Lymansville property zoning change, "the Council had to be paid."

119. At the meeting at North Providence restaurant, DOUGLAS and BURCHFIELD demanded a $75,000 bribe from JOHN DOE #2 in exchange for a favorable vote on the Lymansville property zoning change.

120. On April 1, 2010 at approximately 12:27 p.m. DOUGLAS called IMONDI.

121. On or about April 1, 2010 at approximately 4:24 p.m., ZAMBARANO called DOUGLAS.  ZAMBARANO and DOUGLAS discussed the progress of bribe negotiations between DOUGLAS and IMONDI with respect to JOHN DOE #2 paying a bribe in exchange for favorable action by the Council on the Lymansville property zoning change:

> RD:  Um, when I talked to them, ah "What's up? Just wanted to see if you heard anything?" and "What's going on?" and ah he's like "Ah no, not really" and just kinda like that.  I said "Did you express the situation to him and all that there?" And he's like "Yeah, I told him, but but"... I'm like "What do you mean but? What?" and ah "I don't know, I guess."  He hasn't called me or anything like that yet.

> JZ:  But you said yesterday that he sounded alright at the meeting.

> RD:  He did, but he didn't know the ah what the request was, ya know what I mean?

> JZ:  Yeah.

> RD:  (Laughing) At that time ya know what I mean? Maybe he thought it was one tenth of that, ya know what

35

I mean? Who knows what he thought.

122. In the April 1, 2010 conversation Zambarano and Douglas
discussed deferring the vote on the Lymansville property if
JOHN DOE #2 did not pay the bribe:

> JZ: But you know what we will just defer action if
> nothin's done.
>
> RD: I don't wanna wait a month do you?
>
> JZ: Well suppose nothin's done I mean what are ya
> gonna do?
>
> RD: Oh yeah, yeah, yeah, at that point we would have
> to, right.

123. On April 2, 2010, at approximately 3:07 p.m., DOUGLAS called
ZAMBARANO to discuss the Lymansville property bribe.
Douglas told Zambarano that he "just got a call from that
guy." Douglas said, "he wants to meet with me tonight or
tomorrow morning." Zambarano asked, "who [JOHN DOE #2] or Ed
[Imondi]?" Douglas replied, "same two guys as last
(unintelligible) no different." Douglas said, "he didn't
really want to talk, he wants to meet to talk. He didn't say
no, you know what I mean?"

124. During the April 2, 2010 telephone conversation, ZAMBARANO
sought to reassure DOUGLAS before DOUGLAS' meeting with

IMONDI and JOHN DOE #2 by comparing the situation to the bribery solicitation of JOHN DOE # 1 regarding the supermarket property. "I had no reservations, I never really knew [JOHN DOE #1] before I went down to the office but I had no reservations with that because Bobby [CIRESI]'s a good friend of mine." DOUGLAS replied "See this guy, the middle guy, you know he grew up with Joey [BURCHFIELD]'s father." ZAMBARANO stated, "when this happens it becomes a catch 22 because if he says fuck you then he's worried about how it's gonna play out at the meeting."

125. Shortly after the April 2, 2010 telephone conversation referenced above, ZAMBARANO called DOUGLAS again to discuss DOUGLAS' meeting with IMONDI and JOHN DOE #2.  ZAMBARANO stated "Hey Ray, I was not trying to scare you. We are all in this together. If something was to happen I'll go down with the ship too."

126. On April 2, 2010, DOUGLAS and ZAMBARANO had a telephone conversation at approximately 9:59 a.m. in which they discussed the status of the bribe negotiations and deferring action on the Lymansville property vote if the developer refused to pay the bribe and the fact that DOUGLAS was keeping BURCHFIELD appraised of developments:

37

JZ:   Did you talk to Joey [BURCHFIELD]?

RD:   No.

JZ:   No? Did he leave you a message and tell you what he (inaudible)?

RD:   Yeah Yeah, he sent me a text or whatever but I didn't actually talk to him you know.

JZ:   Neither did I.  I hope he is able to come back here for this I mean I don't know what's gonna happen anyways.

RD:   Yeah, well, he told me. I got him on the phone, he says "I'll come back there tomorrow" if I want but I told him, he goes, "That other guy never called you back?" and I'm like "No, he never fuckin' called me." You know? I don't like that fuckin' guy didn't call me... I don't like that at all.

JZ:   Nah, well you know what, I mean he knows,  I don't... What does he expect's gonna happen if he avoids us? Cause what does he thinks gonna happen Tuesday night?

RD:   I was thinkin' that maybe, maybe, we were too greedy or somethin'...shoulda just ask for a little bit (inaudible)  I don't know.

JZ:   What did you say to him, (inaudible)?

RD:   Yeah......you know....(inaudible) maybe should said fifty you know what I mean and not been a pig don't know you know?

JZ:   Well, why didn't he counter, counter, counter, counter-propose?

RD:   No, maybe he will. He didn't not, yet. I just, I didn't.  You know how you tell, people talk to you on the on the phone, you can tell by his tone of voice? Like I just, I could just hear like (unintelligible) in his voice. You know what I mean? You know?

JZ:   So what did he say, he was gonna let you know?

RD:   Yeah, he said "I'll let you know." He said he was meetin' with the guy yesterday then never called me. A day later still hasn't called me so...you know?

JZ:   Well, whatever. I'm not gonna get excited about it we just gotta do what we gotta do Tuesday.

RD:   Yeah, yeah, absolutely, absolutely...

127. On or about April 2, 2010, at approximately 5:57 p.m., DOUGLAS made a telephone call to IMONDI.

128. On or about April 2, 2010, at approximately 5:59 p.m., IMONDI made a telephone call to JOHN DOE #2.

129. On or about April 2, 2010, at approximately 6:10 p.m., IMONDI had a telephone conversation with JOHN DOE #2.

130. On or about April 2, 2010, at approximately 6:12 p.m., IMONDI made a telephone call to DOUGLAS.

131. On or about April 2, 2010, at approximately 6:54 p.m., DOUGLAS made a telephone call to IMONDI.

132. On or about April 3, 2010, DOUGLAS and ZAMBARANO met at

   ZAMBARANO's home to discuss the Lymansville property zoning

   change.


133. On or about April 4, 2010 ZAMBARANO met with CS#1 to discuss

   the bribe negotiations on the Lymansville property zoning

   change.   ZAMBARANO falsely told CS#1 that the amount of the

   Lymansville bribe request was $25,000, when in reality it

   was $75,000:

> JZ:   Alright this thing.  Our goal was to get twenty-
> five, alright, and there was a middle man that
> was talkin' to ...not the guy that I met [JOHN DOE
> #2's business partner], the [JOHN DOE #2] guy that
> owns the Lowes and all that...he's the guy with
> the money.

> CS#1:  Yup.

> JZ:   So, we, they met with them and he came back and he
> says,  I don't have a problem with any of that.
> He says matter of  fact...he says, I'll agree to
> everything.  He says, but the problem is....he
> says now..  I  have got to continue.... more
> happened after this. He says until this gets
> approved I can't get the financing. And he says, I
> got all kinds of money tied up. He says, so he..
> he says, I have got a problem coming up with the
> cash right now.  So, he says, tell them I'm going
> to have the financing within sixty days, after
> this thing is approved and everything and I'm a
> man of my word and so he came back to us, ...
> Yeah, so ...uh... we told him, that he has to come
> up with something.  He has to show some kind of
> something.  He has to show some good faith...he
> even comes up with half, we'll get $2,500 a piece
> and then in sixty days, he'll give us the rest of
> the money.  It's up to us.  I mean do you, we want
> to take this chance, but in another words...if he
> doesn't come up with half were deferring action.

CS#1:   But ..but worse case we get ..we get the
        twenty-five?

JZ:     Twenty-five, but I want the five (CS#1).

CS#1:   Yeah.

JZ:     You don't?

CS#1:   Yeah... yeah


134. During the April 4, 2010 conversation ZAMBARANO explained to
     CS#1 that CIRESI was no longer acting as middleman but had
     referred IMONDI to perform the role:

CS#1:   What about the middle guy is he getting paid
        too?

JZ:     He's getting five.  We're all getting five.

CS#1:   He's getting the same thing, okay.

JZ:     I mean, I mean, we had to pay him.  I mean
        he, we had to give him it...

CS#1:   So Bobby's out?

JZ:     Yeah, Bobby's out.

CS#1:   Bobby CIRESI.

JZ:     Yeah, he's out.

CS#1:   Okay.

JZ:     So, uh, the middle guy, you probably know
        him, but it's um, EDDIE IMONDI...

135. In the April 4, 2010 conversation ZAMBARANO further explained that CIRESI referred IMONDI to the role of middleman:

CS#1:    How did you meet the IMONDI guy?

JZ:      Who met the IMONDI guy?

CS#1:    How did you come to know him?

JZ:      'Cause Bobby CIRESI told me that he was [JOHN DOE #2's] partner in the other deal.

CS#1:    So you just went up to him, like cold?

JZ:      No, Joey [BURCHFIELD] knows IMONDI very good.

CS#1:    Ah.

JZ:      Like this ...so IMONDI said the guy...

CS#1:    Our Joey?

JZ:      Yeah...he said "IMONDI is a man..." IMONDI said "the guy is a man of his word." He said, "I will not steer you guys wrong." He said, "but don't you think he should come up with something." He said, "yeah, I do." He says, "so I'm going to tell him over the weekend and will call..."

CS#1:    So even, even Imondi, uh, even [JOHN DOE #2] thinks he should come up with money?

JZ:      No, uh, IMONDI.

CS#1:    IMONDI.

JZ:      IMONDI.

CS#1:    IMONDI does, okay.

136. In the April 4, 2010 conversation, ZAMBARANO told CS#1 that
   he said to JOEY [BURCHFIELD], "You know what, maybe in
   sixty days we can come up with a little technicality and get
   a few thousand each more from this guy." He said, "JOHNNY
   [ZAMBARANO] it's up to you." He says in other words, "Do you
   want to do this?" He said he should show some good faith by
   Tuesday night. Which RAY [DOUGLAS] insisted on it, to the
   middle man."

137. ZAMBARANO told CS#1 that DOUGLAS and ZAMBARANO were worried
   about being exposed if they deferred action on the
   Lymansville property zoning change. ZAMBARANO stated "Ray
   [DOUGLAS] was at my house yesterday.  What worries me is, if
   we defer action on this, is this guy stupid enough to go
   around saying they deferred action because they tried to
   shake me down and I didn't give them, deliver them the
   money?"

138. On or about April 5, 2010, DOUGLAS and ZAMBARANO had a
   telephone conversation at approximately 1:06 p.m. in which
   they discussed the Lymansville property bribe and the fact
   that ZAMBARANO lied to CS#1 regarding the true bribe amount:

   RD:  I called that other guy too, speaking of coco. He wants
        me to call him at 4:00, but, I didn't like his tone of
        voice.

43

JZ: [CS#1] called me yesterday and I told him what we said
we're going to tell him.  He was fine with it.  I told
you. He was happy as a pig in shit.

RD: Yeah he's fine because he's not doing anything and he
knows we don't even need him for it. You know what I
mean.

JZ: I know.

RD: He's not stupid. So anything for him is like a bonus.

JZ: Even that amount you said he would be thrilled and you
were right because he was thrilled the last time.

RD: Yeah right exactly he gettin' more than the last time.
So, um, good, he'll be happy.

139. In the April 5, 2010, DOUGLAS and ZAMBARANO telephone

conversation, ZAMBARANO expressed frustration.  "You know we

give all these guys all this stuff.  What do we get out

it?... I just get disgusted.  We're the ones that have to

run for office.  We're the ones who have to put up with all

the bullshit.  And these people... we're better off being

the ones behind the scenes like these people and gettin'

things from the Councilmen..."

140. In an April 5, 2010, DOUGLAS and ZAMBARANO telephone

conversation at approximately 5:49 p.m., ZAMBARANO sought an

update on the bribe negotiations:

JZ: Hey, How'd you make out?

RD: Not too good.

JZ: No?

RD:   No, not even a call back yet…

JZ:   Oh boy.  You know I was thinking about this after,
      buddy.  I hope you're not mad, that you're doing, you
      know you said about [CS#1] and "Oh, I'm doing all the
      work."  I hope you don't think that about me.

RD:   No, no, not at all. Not at all buddy.

JZ:   Because we help one another.  I mean I did the last one
      and you know what I mean…

RD:   Yeah, of course. I'm not mad. Not even a little buddy.

JZ:   I just wanted to make sure.

RD:   I mean I knew the other guy, so that was my, you know,
      I knew the other guy a little bit, but you know, I had
      my in with him.

141.  In the April 5, 2010 telephone conversation ZAMBARANO and

      DOUGLAS discussed punishing JOHN DOE #2 if he failed to pay

      a bribe to the councilmen:


JZ:   Well Let's see what happens.  You know what?  I'll tell
      you  what buddy.  If we do this without anything and
      then he screws us, I'm gonna make that guy's life
      miserable down there.

RD:   Oh I'll do whatever I can do to be right behind you.

JZ:   Yup, yup.

RD:   You know what I mean.  Don't worry about that.


142.  On or about April 6, 2010, at approximately 3:07 p.m.

      DOUGLAS and ZAMBARANO had a telephone conversation in which

      DOUGLAS informed ZAMBARANO that JOHN DOE #2 was unable to

      come up with money to bribe the councilmen:

JZ:   How'd you make out?

RD:   Absolutely nothing.

JZ:   Did you talk to him?

RD:   Yup.  Yup.  Can't get any, trying a hundred percent and can't do nothing.  Sounds like a stroke job to me, but I don't know, you know.

JZ:   It's hard to believe. That guy's involved in all that stuff, there's no way.

RD:   Exactly.  That's my opinion too, you know what I mean? That this guy's involved with all this stuff.  And there's no way he can come up and get a ham sandwich up? I find it hard to believe. Know what I mean?

JZ:   What are we going to do?

RD:   I don't know.  Well Joey wants us to meet earlier at 6:00 so we'll have to talk about it.

JZ:   Yeah yeah, he wants, yeah.

RD:   We'll talk about it at 6:00.  I'm gonna call him now and let him know.

JZ:   Alright.

RD:   Alright buddy.

143.  On or about April 6, 2010, at approximately 6:00 p.m., BURCHFIELD, DOUGLAS and ZAMBARANO met at Chubby's, a North Providence, Rhode Island bar in which DOUGLAS held a hidden ownership interest, to discuss the Lymansville property zoning change.

144.  On or about April 6, 2010, CIRESI attended the Town Council special meeting, representing JOHN DOE #2's COMPANY.

145. On or about April 6, 2010, BURCHFIELD, DOUGLAS and ZAMBARANO caused the Town Council to defer action on the Lymansville property zone change to April 26, 2010 because JOHN DOE #2 failed to pay the $75,000 bribe.

146. On or about April 6, 2010, at a special meeting of the Town Council regarding the Lymansville property zoning change, DOUGLAS made a motion to continue the Lymansville property zoning change hearing to April 26, 2010.  DOUGLAS falsely stated that the reason for the continuance was to provide an opportunity for other Councilmen to visit the Lymansville property, when the true reason for the continuance was to provide JOHN DOE #2 the opportunity to obtain funds to pay BURCHFIELD, DOUGLAS and ZAMBARANO a $75,000 bribe.

147. On or about April 6, 2010, at approximately 10:37 p.m., ZAMBARANO and DOUGLAS discussed their continued attempts to collect a bribe from JOHN DOE #2 in a telephone conversation:

JZ:  I hope this happens in three weeks.

RD:  Well trust me, I will be on the phone tomorrow morning. Don't you worry.

47

148. On or about April 7, 2010, ZAMBARANO and BURCHFIELD

discussed the Lymansville property zone change bribe in

veiled language during a telephone conversation:

>JB: If this other thing happens, I'm not running. I'm
>done.
>
>JZ: You mean the...?
>
>JB: I'm telling ya.
>
>JZ: What other thing? The thing from last night?
>
>JB: (long pause) The good thing we've been waiting
>for.
>
>JZ: Oh, yeah. But we're not gonna know if that happens
>until after the guy wins the race.
>
>JB: (long pause)  No, not that!
>
>JZ: Oh, that thing that we're waiting for.
>
>JB: Yup.
>
>JZ: Oh.

149. On or about April 12, 2010, ZAMBARANO and DOUGLAS discussed

the Lymansville property in a telephone conversation:

>JZ: Two weeks from today is that meeting.
>
>RD: Yeah, I'll follow up with that like next week. You
>know what I mean? I'm not gonna..
>
>JZ: Yeah, yeah, oh, no, no.  I wouldn't, no.
>
>RD: I'm not gonna worry about it this week.  It's two
>weeks from this Tuesday, right?
>
>JZ: Two weeks from tomorrow, yeah.

RD: From tomorrow, yeah.  So, next week I'll follow...like a week ahead of time, and uhh, you know, check in with him and see how he's making out.  You know what I mean?

JZ: I hope he has it all.

RD: Well, he said that uhh, you know, said he, you know, said he would...(unintelligible) So, uhh, you know, we'll see what happens.

150. On or about April 14, 2010, ZAMBARANO and DOUGLAS discussed the Lymansville property in a telephone conversation:

JZ: Everything I do is always the hard way, Ray.

RD: Yeah, I hear ya, buddy.

JZ: Nothin's ever handed.

RD: Yeah, well... Hopefully I can hand you something, we'll see.

JZ: Maybe two weeks from now, that better happen, I'll tell ya huh.

RD: It better happen. I came to the point where I'm relying on it.

JZ: Yeah... Me too, me too.

151. On or about April 14, 2010, at approximately 8:52 a.m., ZAMBARANO and BURCHFIELD discussed the Lymansville property in a telephone conversation:

JZ: The only thing that is nice about this whole thing is that other thing in the next couple of weeks. Other than that its going to suck.

JB: Yeah.

49

152. On or about April 14, 2010 at approximately 9:47 a.m.,
     ZAMBARANO and BURCHFIELD discussed the Lymansville property
     in a telephone conversation: BURCHFIELD stated to ZAMBARANO
     "Hopefully that other thing comes through and we can move on
     nice nice." BURCHFIELD also stated to ZAMBARANO "If this
     other thing happens, I'm telling you, we'll have to sit down
     me you and Ray have a long talk."

153. On or about On April 20, 2010 at approximately 7:13 a.m.,
     Zambarano called Douglas to discuss the bribe and what
     official action the Councilmen should take on the
     Lymansville property zoning change:

> JZ:  Anything on that other guy? That's Monday you know
>      that meeting....
>
> RD:  It's Monday (unintelligible).. I'm taking a ride
>      down and to see that other guy.  I told you I
>      didn't like his attitude last time I talked to
>      him.
>
> JZ:  Yeah, you told me that.
>
> RD:  So, I'm gonna go to the other guy.  Hopefully,  I
>      wanted to go today, but I'm just too fuckin' busy.
>
> JZ:  What are we gonna do if nothing happens Monday
>      night's meeting?
>
> RD:  I don't know...no, something will happen, I just
>      don't know if it's gonna be exactly,....what you
>      know...you know everything we want,...you know
>      what I mean.
>
> JZ:  Yeah.. I mean, but he should have ...it should be
>      all because we gave him three extra weeks.

RD: Exactly, I agree with you......I agree with you.
So, ...uhm, I will talk to the guy...maybe I'll
just try to call the other guy today...

154. On or about April 23, 2010 at approximately 9:39 a.m.,

ZAMBARANO had a telephone conversation regarding the

Lymansville property with BURCHFIELD, who was at Foxwoods

Resort Casino in Connecticut:

JB: I'm coming back tonight because tomorrow at some
point me and you and Ray need to go see that guy.
We got to take a ride.

JZ: Yeah, I know, because what are we gonna do about
that?

JB: I don't know, I don't know we gotta talk to him
and see what he says.

155. On or about April 25, 2010, at approximately 10:26 a.m.

ZAMBARANO had a telephone conversation regarding the

Lymansville property with BURCHFIELD:

JZ: How's Ray making out with the other guy, you don't
know?

JB: I don't know, that's why we gotta meet today.  We
might have to go see him.

156. On or about April 26, 2010, at approximately 9:27 a.m.,

ZAMBARANO had a telephone conversation regarding the

Lymansville property with BURCHFIELD in which ZAMBARANO

stated "[CS#1] called me this morning to ask me what was going on with that other thing and I said I'll let you know. He said "Well how am I voting on it?  I said I'll let you know by the end of the day."

157.  On or about April 26, 2010, DOUGLAS made a telephone call to JOHN DOE #2 and demanded a partial payment of the $75,000 bribe in exchange for a favorable vote on the Lymansville property zoning change.

158.  On or about April 26, 2010, at approximately 1:40 p.m. BURCHFIELD, DOUGLAS and ZAMBARANO had lunch at Andino's Restaurant on Federal Hill in Providence, Rhode Island to discuss the Lymansville property zoning change.

159.  On or about April 26, 2010, at approximately 2:03 p.m., BURCHFIELD, DOUGLAS and ZAMBARANO exited Andino's Restaurant.  Two of the councilmen exchanged high-fives.

160. On or about April 26, 2010, at approximately 2:42 p.m.,
     BURCHFIELD and DOUGLAS met IMONDI at the Cadillac Lounge in
     Providence, Rhode Island.


161. On or about April 26, 2010, at approximately 3:01 p.m.
     IMONDI exited the Cadillac Lounge, got into his car, drove
     to the parking lot of the Home Depot next to the Cadillac
     Lounge and waited in his car.


162. On or about April 26, 2010, at approximately 3:24 p.m., JOHN
     DOE #2 got into IMONDI's vehicle and delivered $21,000 cash
     to IMONDI.  The $21,000 cash represented a partial payment
     of the $75,000 bribe JOHN DOE #2 agreed to pay in exchange
     for favorable action by the Town Council with respect to the
     LYmansville property zone change.


163. On or about April 26, 2010, at approximately 3:30 p.m.,
     IMONDI met BURCHFIELD and DOUGLAS in the parking lot of the
     Cadillac Lounge.  BURCHFIELD, DOUGLAS and IMONDI got into
     DOUGLAS' car, where IMONDI delivered the cash bribe to
     BURCHFIELD and DOUGLAS.

164. On or about April 26, 2010, at approximately 3:30 p.m.,
     IMONDI retained a portion of the cash bribe for himself.


165. On or about April 26, 2010, at approximately 3:33 p.m.
     BURCHFIELD kissed IMONDI as a sign of gratitude for
     delivering the cash bribe.


166. On or about April 26, 2010, at approximately 3:50 p.m.
     DOUGLAS met with ZAMBARANO at DOUGLAS' home and delivered a
     portion of the cash bribe to ZAMBARANO representing the
     share of ZAMBARANO and CS#1.


167. On or about April 26, 2010, shortly after DOUGLAS delivered
     the cash to ZAMBARANO, BURCHFIELD and ZAMBARANO had a
     telephone conversation:

     JB: What's up?

     JZ: Thank you buddy.

     JB: Thank you.

     JZ  Thank you for remembering that.

     JB: You're welcome brother.   That's it..that...that was it
         right?

     JZ: Yup!

JB:   I thought...I thought it was more then that for some
   reason, but Ray said, no.  Alright good... alright...
   uhm... hopefully in the next couple of weeks we'll be
   all set with the rest. And the guy made us feel very
   comfortable, so...

JZ: Good

168. On or about April 26, 2010, shortly before the Town Council
   meeting, ZAMBARANO told CS#1 that everything was all set
   regrading the Lymansville property and that ZAMBARANO had
   $2,000 cash for CS#1 as CS#1's share of the bribe back at
   ZAMBARANO's home.

169. On or about April 26, 2010, at approximately 4:30 p.m. at a
   Town Council meeting in North Providence, Rhode Island,
   BURCHFIELD, DOUGLAS and ZAMBARANO voted in favor of the
   Lymansville property zoning change in exchange for a cash
   bribe.

170. On or about April 26, 2010, during a Town Council meeting in
   North Providence, DOUGLAS discussed the Lymansville property
   zoning change with CS#1:

RD:   (Laughing)...Johnny [ZAMBARANO] talk to you already
   (CS#1)?

CS#1: Yeah, great news.

RD:  It's always good news, right...(laughing).... Honestly, I was in favor of it anyway...(laughing)...(UI)...I got to be honest with you (laughing)...

171.  On or about April 26, 2010, at approximately 7:30 p.m., ZAMBARANO gave CS#1 $2,000 cash representing CS#1's portion of the bribe received in exchange for the Lymansville property zoning change.

172.  On or about April 29, 2010, ZAMBARANO had a telephone conversation with DOUGLAS regarding the additional bribe money JOHN DOE #2 agreed to pay the Councilmen in exchange for official action on the Lymansville property zone change:

JZ:  ...that guy should come through in another month or so, you  think?

RD:  He better.

JZ:  I know.

RD:  He will.  The other guy, the other guy stuck his name out for me. He wouldn't put his name out for him unless he thought it was gonna happen.

JZ:  Yeah, I know. He's in line for some more too, so...

RD:  Yeah, exactly.


All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

### Receipt of a Bribe By an Agent of an

### Organization Receiving Federal Funds

173. The allegations set forth in paragraphs 1 through 172 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

174. On or about February 10, 2009, in the District of Rhode Island, Defendants,

JOSEPH S. BURCHFIELD

RAYMOND L. DOUGLAS III and

JOHN A. ZAMBARANO

and others known and unknown to the Grand Jury, aiding and abetting each other, each being an agent of an organization, to wit: the Town of North Providence, Rhode Island, which organization received in excess of $10,000 under one or more federal programs involving grants, contracts and other forms of federal assistance in a one-year period, did knowingly and corruptly, solicit, demand, accept, and agree to accept something of value, that is, cash, from a person or persons known to the Grand Jury, intending to be influenced and rewarded in connection with a transaction and series of

transactions of the Town of North Providence involving
$5,000 or more, that is, the supermarket zoning change.

All in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2.

## COUNT THREE

## Giving a Bribe To An Agent of An

## Organization Receiving Federal Funds

175. The allegations set forth in paragraphs 1 through 172 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

176. On or about February 10, 2009, in the District of Rhode Island and elsewhere, Defendant,

ROBERT S. CIRESI

did knowingly, intentionally and corruptly give, offer and agree to give things of value to one or more agents of an organization, to wit: The Town of North Providence, Rhode Island ("the Town"), which organization received benefits in excess of $10,000 under one or more federal programs involving grants, contracts and other forms of federal assistance in a one-year period, with the intent to influence those agents in connection with business and a series of transactions of the Town involving $5,000 or more, that is the supermarket zoning change.

All in violation of Title 18, United States Code, Section 666(a)(2), and Title 18, United States Code, Section 2.

## COUNT FOUR

### Attempt to Obstruct Commerce by Extortion

### Under Color of Official Right

177. The allegations set forth in paragraphs 1 through 172 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

178. On or about February 10, 2009, in the District of Rhode Island, Defendants,

JOSEPH S. BURCHFIELD

RAYMOND L. DOUGLAS III

JOHN A. ZAMBARANO and

ROBERT S. CIRESI

and others known and unknown to the Grand Jury, aiding and abetting each other, did knowingly obstruct, delay, and affect and attempt to obstruct, delay, and affect in any way and degree commerce and the movement of articles and commodities in commerce by extortion, in that Defendants obtained property, that is, cash, not due Defendants or their public offices, from another person or persons, to wit JOHN DOE #1 AND JOHN DOE #1'S Company, with their consent,

60

wrongfully induced by fear of economic harm, and under color of official right.

All in violation of 18 U.S.C. §1951 and 18 U.S.C. §2.

## COUNT FIVE

### Receipt of a Bribe By an Agent of an

### Organization Receiving Federal Funds

179. The allegations set forth in paragraphs 1 through 172 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

180. On or about April 26, 2010, in the District of Rhode Island, Defendants,

JOSEPH S. BURCHFIELD

RAYMOND L. DOUGLAS III and

JOHN A. ZAMBARANO

and others known and unknown to the Grand Jury, aiding and abetting each other, each being an agent of an organization, to wit: the Town of North Providence, Rhode Island, which organization received in excess of $10,000 under one or more federal programs involving grants, contracts and other forms of federal assistance in a one-year period, did knowingly and corruptly, solicit, demand, accept, and agree to accept something of value, that is, cash, from a person or persons known to the Grand Jury, intending to be influenced and rewarded in connection with a transaction and series of

62

transactions of the Town of North Providence involving $5,000 or more, that is, the Lymansville property zoning change.

All in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2.

## COUNT SIX

### Giving a Bribe To An Agent of An
### Organization Receiving Federal Funds

181. The allegations set forth in paragraphs 1 through 172 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

182. On or about April 26, 2010, in the District of Rhode Island and elsewhere, Defendant,

EDWARD IMONDI

did knowingly, intentionally and corruptly give, offer and agree to give things of value to one or more agents of an organization, to wit: The Town of North Providence, Rhode Island ("the Town"), which organization received benefits in excess of $10,000 under one or more federal programs involving grants, contracts and other forms of federal assistance in a one-year period, with the intent to influence those agents in connection with business and a series of transactions of the Town involving $5,000 or more, that is the Lymansville property zoning change.


All in violation of Title 18, United States Code, Section 666(a)(2), and Title 18, United States Code, Section 2.

## COUNT SEVEN

### Attempt to Obstruct Commerce by Extortion
### Under Color of Official Right

183. The allegations set forth in paragraphs 1 through 172 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

184. On or about April 26, 2010, in the District of Rhode Island, Defendants,

JOSEPH S. BURCHFIELD

RAYMOND L. DOUGLAS III

JOHN A. ZAMBARANO and

EDWARD IMONDI

and others known and unknown to the Grand Jury, aiding and abetting each other, did knowingly obstruct, delay, and affect and attempt to obstruct, delay, and affect in any way and degree commerce and the movement of articles and commodities in commerce by extortion, in that Defendants obtained property, that is, cash, not due Defendants or their public offices, from another person or persons, to wit JOHN DOE #2 AND JOHN DOE #2'S Company, with their consent,

wrongfully induced by fear of economic harm, and under color of official right.

All in violation of 18 U.S.C. §1951 and 18 U.S.C. §2.

## COUNT EIGHT

## Solicitation of a Bribe By an Agent of an

## Organization Receiving Federal Funds

185. The allegations set forth in paragraphs 1 through 172 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

186. In or about November, 2008, in the District of Rhode Island, Defendants,

JOSEPH S. BURCHFIELD and

RAYMOND L. DOUGLAS III

and others known and unknown to the Grand Jury, aiding and abetting each other, each being an agent of an organization, to wit: the Town of North Providence, Rhode Island, which organization received in excess of $10,000 under one or more federal programs involving grants, contracts and other forms of federal assistance in a one-year period, did knowingly and corruptly, solicit, demand, accept, and agree to accept something of value, that is, cash, from a person or persons known to the Grand Jury, intending to be influenced and rewarded in connection with a transaction and series of transactions of the Town of North Providence involving

$5,000 or more, that is, Business A's application for a full liquor license.

All in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2.

## COUNT NINE

### Attempt to Obstruct Commerce by Extortion

### Under Color of Official Right

187. The allegations set forth in paragraphs 1 through 172 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

188. In or about November, 2008, in the District of Rhode Island, Defendants,

JOSEPH S. BURCHFIELD and

RAYMOND L. DOUGLAS III

and others known and unknown to the Grand Jury, aiding and abetting each other, did knowingly obstruct, delay, and affect and attempt to obstruct, delay, and affect in any way and degree commerce and the movement of articles and commodities in commerce by extortion, in that Defendants attempted to obtain property not due Defendants or their public offices, from another person or persons, to wit the owners of BUSINESS A, with their consent, wrongfully induced by fear of economic harm, and under color of official right.

All in violation of 18 U.S.C. §1951 and 18 U.S.C. §2.

69

<u>COUNT TEN</u>

<u>Solicitation of a Bribe By an Agent of an</u>

<u>Organization Receiving Federal Funds</u>

189. The allegations set forth in paragraphs 1 through 172 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

190. In or about March, 2009, in the District of Rhode Island, Defendants,

JOSEPH S. BURCHFIELD

RAYMOND L. DOUGLAS III and

JOHN A. ZAMBARANO

and others known and unknown to the Grand Jury, aiding and abetting each other, each being an agent of an organization, to wit: the Town of North Providence, Rhode Island, which organization received in excess of $10,000 under one or more federal programs involving grants, contracts and other forms of federal assistance in a one-year period, did knowingly and corruptly, solicit, demand, accept, and agree to accept something of value, that is, cash, from a person or persons known to the Grand Jury, intending to be influenced and rewarded in connection with a transaction and series of transactions of the Town of North Providence involving

$5,000 or more, that is, Business B's request for extended hours.

All in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2.

## COUNT ELEVEN

### Attempt to Obstruct Commerce by Extortion

### Under Color of Official Right

191. The allegations set forth in paragraphs 1 through 172 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

192. In or about March 2009, in the District of Rhode Island, Defendants,

JOSEPH S. BURCHFIELD

RAYMOND L. DOUGLAS III and

JOHN A. ZAMBARANO

and others known and unknown to the Grand Jury, aiding and abetting each other, did knowingly obstruct, delay, and affect and attempt to obstruct, delay, and affect in any way and degree commerce and the movement of articles and commodities in commerce by extortion, in that Defendants attempted to obtain property not due Defendants or their public offices, from another person or persons, to wit the owner of BUSINESS B, with their consent, wrongfully induced by fear of economic harm, and under color of official right.

All in violation of 18 U.S.C. §1951 and 18 U.S.C. §2.

## COUNT TWELVE

## FALSE STATEMENT TO A FEDERAL AGENT

## 18 U.S.C. § 1001

193. On or about May 4, 2010, within the District of Rhode
Island,

### JOHN A. ZAMBARANO

defendant herein, in a matter within the jurisdiction of the
Federal Bureau of Investigation, did knowingly and willfully
falsify, conceal, and cover up by any trick, scheme or
device a material fact, and did knowingly and willfully make
a false, fraudulent, and fictitious material statement and
representation, by falsely stating that he did not receive
any money in exchange for voting in favor of the Lymansville
property zoning change, that he did not give anyone any
money for Lymansville property zoning change vote, and that
he never discussed the Lymansville property zoning change
with ROBERT S. CIRESI.


All in violation of 18 U.S.C. § 1001.

## FORFEITURE ALLEGATIONS

1.    The allegations contained in Counts One, Two, Three, Five,
and Six of this Indictment are hereby realleged and
incorporated by reference for the purpose of alleging
forfeitures pursuant to Title 18, United States Code,
Section 981(a)(1)(C) and Title 28, United States Code,
Section 2461(c).

2.    Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. §
2461(c)(1), upon conviction, the defendants, JOSEPH S.
BURCHFIELD, RAYMOND L. DOUGLAS III, and JOHN A. ZAMBARANO,
shall forfeit to the United States, any and all right,
title, and interest in any and all property constituting or
derived from any proceeds the defendants obtained, directly
or indirectly, as a result of the offenses alleged in Counts
One and Two of this Indictment, which allege the corrupt
solicitation or demand or acceptance of a thing of value
while intending to be influenced or rewarded in connection
with a business, transaction, or series of transactions of a
local government involving a thing of value of $5,000 or
more in violation of 18 U.S.C. § 666, and conspiracy to
commit the same, and any and all property traceable to such
property, including, but not limited to a sum of money equal
to $25,000 in United States Currency, in that this sum

represents the amount of proceeds obtained as a result of the offenses alleged in Counts One and Two of this Indictment, for which the defendants are jointly and severally liable.

3.  Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)(1), upon conviction, the defendant, ROBERT S. CIRESI, shall forfeit to the United States, any and all right, title, and interest in any and all property constituting or derived from any proceeds the defendant obtained, directly or indirectly, as a result of the offenses alleged in Counts One and Three of this Indictment, which allege the corrupt giving, offering, or agreeing to give of a thing of value while intending to influence or reward an agent of a local government in connection with a business, transaction, or series of transactions of a government agency involving a thing of value of $5,000 or more in violation of 18 U.S.C. § 666, and conspiracy to commit the same, and any and all property traceable to such property, including, but not limited to a sum of money equal to $25,000 in United States Currency, in that this sum represents the amount of proceeds obtained as a result of the offenses alleged in Counts One and Three of this Indictment, for which the defendants are jointly and severally liable.

4.    Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. §
      2461(c)(1), upon conviction, the defendants, JOSEPH S.
      BURCHFIELD, RAYMOND L. DOUGLAS III, and JOHN A. ZAMBARANO,
      shall forfeit to the United States, any and all right,
      title, and interest in any and all property constituting or
      derived from any proceeds the defendants obtained, directly
      or indirectly, as a result of the offenses alleged in Counts
      One and Five of this Indictment, which allege the corrupt
      solicitation or demand or acceptance of a thing of value
      while intending to be influenced or rewarded in connection
      with a business, transaction, or series of transactions of a
      local government involving a thing of value of $5,000 or
      more in violation of 18 U.S.C. § 666, and conspiracy to
      commit the same, and any and all property traceable to such
      property, including, but not limited to a sum of money equal
      to $21,000 in United States Currency, in that this sum
      represents the amount of proceeds obtained as a result of
      the offenses alleged in Counts One and Five of this
      Indictment, for which the defendants are jointly and
      severally liable.

5.    Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. §
      2461(c)(1), upon conviction, the defendant, EDWARD IMONDI,
      shall forfeit to the United States, any and all right,
      title, and interest in any and all property constituting or

derived from any proceeds the defendant obtained, directly or indirectly, as a result of the offenses alleged in Counts One and Six of this Indictment, which allege the corrupt giving, offering, or agreeing to give of a thing of value while intending to influence or reward an agent of a local government in connection with a business, transaction, or series of transactions of a local government involving a thing of value of $5,000 or more in violation of 18 U.S.C. § 666, and conspiracy to commit the same, and any and all property traceable to such property, including, but not limited to a sum of money equal to $21,000 in United States Currency, in that this sum represents the amount of proceeds obtained as a result of the offenses alleged in Counts One and Six of this Indictment, for which the defendants are jointly and severally liable.

6.   If any of the property described above, as a result of any act or omission of the defendants:

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third party;

    c.   has been placed beyond the jurisdiction of the court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which
cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture

of substitute property pursuant to Title 21, United States

Code, Section 853(p), as incorporated by Title 28, United

States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. §
2461(c).

A TRUE BILL:

**REDACTED**

✓ Grand Jury Foreperson

PETER F. NERONHA
UNITED STATES ATTORNEY

By:

John P. McAdams
Assistant U.S. Attorney

Terrence P. Donnelly
Assistant U.S. Attorney

Steven G. Dambruch
Assistant U.S. Attorney
Criminal Chief

Date: 8/19/10

80